Sheehan & Associates, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck, NY 11021-3104
Telephone:  (516) 268-7080
spencer@spencersheehan.com

United States District Court
Southern District of New York                              7:20-cv-10734

| | |
|---|---|
| Robert Ferguson, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Duracell U.S. Operations, Inc., | |
| Defendant | |

Plaintiff alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Duracell U.S. Operations, Inc. ("defendant") manufactures, distributes, markets, labels and sells batteries in AA ("double A) and AAA ("triple A") sizes under the Optimum line ("Product").

2.    AA batteries are the top-selling battery size in the country, and it is estimated the average American has 13.5 unused AA batteries at any given time, since these are used to provide independent power to devices including cordless phones, shaving equipment, power tools and remote controls.

3.    The Optimum batteries are represented to consumers as more powerful and longer lasting than all other AA batteries, from Duracell and other brands, through the statements "EXTRA LIFE*" and "EXTRA POWER.*"



4.     The back of the packaging describes the Product as "Duracell's **highest energy** disposable **AA** battery engineered to provide the **Extra Life**∗ or **Extra Power**∗ your devices need."



5. In other marketing – print, digital, tv, radio, video, etc. – the Products are promoted with the tagline, "Both is better than not both," referring to the "Extra Life" and "Extra Power."

6. Consumers reasonably draw the conclusion that the Optimum batteries provide additional power *and* a longer shelf-life and active-use life than other similar products, when the opposite is true.

7. The front label contains a miniscule disclaimer (circled in red) which significantly qualifies the main claims, stating "*Delivers extra life or extra power, vs. Coppertop AA [or AAA] in a wide range of devices."



8. The back of the package contains the identical small print disclaimer at the bottom: "*Delivers extra life or extra power, vs. Coppertop AA [or AAA] in a wide range of devices."



9.     Contrary to the front claims, the disclaimer tells consumers the disappointing truth –
the Product *may* have a longer life *or* provide extra power – but not both – *only* compared to
Defendant's Coppertop batteries.

10.     Moreover, these limited "benefits" only occur in an unspecified (read: small) "range
of devices."

11.     The disclaimers are insufficient in size and clarity to correct the net impression of
consumers with respect to the qualities of the Optimum batteries – their tangibly improved, shelf-
life and greater power production – without restriction to any specific device.

12.     Battery shelf-life is a valued attribute by consumers because most household
batteries remain unused for years until they are needed.

13.    Defendant's Optimum batteries have a similar color scheme and packaging to their

Coppertop batteries, which tout a "Guaranteed 10 Years In Storage."



14.    Since the product name, "Optimum" means "best," consumers will believe that the

Optimum batteries include all attributes of the Coppertop batteries – specifically that they will last

at least 10 years in storage.



5

15.     The Optimum's representations of "Extra Life" and "Extra Power" causes consumers to expect that the Optimum batteries will last longer and provide more power than the Coppertop batteries and those of other brands.

16.     Survey evidence confirms that consumers are misled by "Extra Life" and "Extra Power" statements on the Product to expect

17.     However, the Optimum batteries have a shelf life significantly shorter than ten (10) years and less than the Coppertop.

18.     The Optimum batteries use a different chemistry than Coppertop, which is touted as a benefit through the scientific-looking graphics used to promote the Product.



19.     In fact, these differences cause the Optimum batteries to degrade more rapidly than the Coppertop batteries and other brands, which contributes to the Product's misrepresentations.

20.     The instability of the Product's chemical composition results in leakage rates among the highest ever experienced in consumer AA batteries.

21.     This resulted in one of the largest battery recalls from stores in modern times, since leaking batteries can pose health hazards.

22.     Second, the chemical instability means that even if the Product provides greater energy to *some devices*, this decreases rapidly over time.

23.     During the useful lifespan of the batteries, any advantage of the Product will disappear, becoming comparable to or eventually worse than similarly-aged Coppertop batteries or other brands.

24.     Because a large percentage of AA batteries are not used within five (5) years after manufacture, many consumers will not benefit or receive the promised "Extra Life" versus Coppertop and other brands.

25.     The faster deterioration of the Optimum batteries is not disclosed to consumers.

26.     The Optimum batteries contain indicia of a higher quality, premium product, such as a resealable package, compared to the standard punch-out package, which causes consumers to pay their higher price relative to Coppertop and AA batteries of other brands.

27.     Defendant's branding and packaging of the Product is designed to – and does – deceive, mislead, and defraud plaintiff and consumers.

28.     Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

29.     The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

30.     Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

31.     As a result of the false and misleading labeling, the Product is an sold at a premium

price, approximately no less than $9.99 per 6 AA batteries compared to other similar products represented in a non-misleading way, and higher than the price of the Product if it were represented in a non-misleading way.

Jurisdiction and Venue

32.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

33.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

34.    Plaintiff Robert Ferguson is a citizen of New York.

35.    Defendant Duracell U.S. Operations, Inc. is a Delaware corporation with a principal place of business in Chicago, Cook County, Illinois and is a citizen of Illinois.

36.    "Minimal diversity" exists because plaintiff Robert Ferguson and defendant are citizens of different states.

37.    Upon information and belief, sales of the Product exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

38.    Venue is proper in this because a substantial part of the events or omissions giving rise to the claim occurred here, such as the consumption of the Product and recognition the representations were false and misleading.

39.    Venue is further supported because many class members reside in this District.

Parties

40.    Plaintiff Robert Ferguson is a citizen of Peekskill, Westchester County, New York.

41.    Defendant Duracell U.S. Operations, Inc. is a Delaware corporation with a principal

place of business in Chicago, Illinois, Cook County.

42.     During the relevant statutes of limitations for each cause of action alleged, plaintiff purchased the Product within his district and/or State for personal and household consumption and/or use in reliance on the representations of the Product.

43.     Plaintiff purchased the Product on more than one occasion, including between August and November 2020, at stores including but not necessarily limited to Teresa Deli, 819 Washington St, Peekskill, NY 10566 and or Rite Aid, 1107 Main St, Peekskill, NY 10566.

44.     Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon the front label claims and description.

45.     Plaintiff bought the Product at or exceeding the above-referenced price because he liked the product for its intended use and relied upon the front label claims, packaging indicia, and marketing of the Product.

46.     Plaintiff was deceived by and relied upon the Product's deceptive labeling.

47.     Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

48.     The Product was worth less than what Plaintiff paid for it and he would not have paid as much absent Defendant's false and misleading statements and omissions.

49.     Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance that Product's labels are consistent with the Product's components.

<u>Class Allegations</u>

50.     The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

51.     Plaintiff seeks class-wide injunctive relief based on Rule 23(b) in addition to a

monetary relief class.

52.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

53.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

54.    Plaintiff is an adequate representative because his interests do not conflict with other members.

55.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

56.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

57.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

58.    Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York General Business Law ("GBL") §§ 349 & 350</u>
<u>(Consumer Protection Statutes)</u>

59.    Plaintiff incorporates by reference all preceding paragraphs.

60.    Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

61.    Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

62.    Defendant misrepresented the technological, quantitative, qualitative, compositional and/or durational attributes of the Product.

63.     Plaintiff expected the Product to have the qualities it expressed and implied.

64.     Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

65.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

66.     Plaintiff incorporates by reference all preceding paragraphs.

67.     Defendant misrepresented the substantive, quantitative, qualitative, compositional and/or organoleptic attributes of the Product.

68.     The ability of a battery to deliver power *and* have a long shelf-life and active-use life, have a material bearing on price and consumer acceptance of the Product.

69.     Plaintiff expected the Product to have the attributes promised and conveyed.

70.     Defendant had a duty to disclose the true facts of the Product beyond the ineffective disclaimer.

71.     This duty is based on defendant's position, holding itself out as having special knowledge and experience in the production, service and/or sale of the product type.

72.     The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

73.     Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

74.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

75.     Plaintiff incorporates by reference all preceding paragraphs.

76.     The Product was manufactured, labeled and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that it possessed substantive, quality, duration, technological and/or compositional attributes it did not.

77.     Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

78.     This duty is based, in part, on defendant's reputation, as one of the most recognized companies in the nation with respect to products of the type described here.

79.     Plaintiff provided or will provide notice to defendant, its agents, representatives, and their employees.

80.     Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

81.     The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable because plaintiff expected a product that comported with how it was represented.

82.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

83.     Plaintiff incorporates by reference all preceding paragraphs.

84.     Defendant misrepresented the attributes and qualities of the Product.

85.     Defendant's fraudulent intent is evinced by its failure to accurately identify the

Product's attributes and qualities when it knew its statements were neither true nor accurate and misled consumers.

86.    Defendant engaged an advertising firm to tout the "extra life" and "extra power" when it knew or should have known these representations were not true and could mislead consumers.

87.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Unjust Enrichment

88.    Plaintiff incorporates by reference all preceding paragraphs.

89.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4.  Awarding monetary damages, statutory damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   December 19, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan

Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

7:20-cv-10734
United States District Court
Southern District of New York

Robert Ferguson, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Duracell U.S. Operations, Inc.,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cuttermill Rd Ste 409
Great Neck NY 11021-3104
   Tel: (516) 268-7080
   Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  December 19, 2020

/s/ Spencer Sheehan
Spencer Sheehan